UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:20-cv-00131-KDB-DCK

| | |
|---|---|
| JUDAMEYRE MCRAE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **ORDER** |
| ) | |
| ) | |
| NIAGARA BOTTLING, LLC, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on initial review of Plaintiff's Amended Complaint [Doc. 8] under 28 U.S.C. § 1915(e)(2). Plaintiff is proceeding in forma pauperis. [Docs. 2, 5].

I.     BACKGROUND

Plaintiff Judameyre McRae ("Plaintiff") filed a Title VII employment discrimination action on August 26, 2020, naming as Defendants Melanie Calkins, identified as a Human Resources Manager at Niagara Bottling; Terry LNU, identified as a first shift supervisor at Niagara Bottling; and FNU LNU, identified as a first shift forklift supervisor at Niagara Bottling. [Doc. 1]. Plaintiff claimed that Defendants discriminated against him under Title VII based on race and color through his termination from employment, unequal terms and conditions of his employment, and retaliation. Plaintiff also purported to assert a claim for defamation. [Id. at 4]. The Court conducted initial review of that Complaint and found that Plaintiff failed to state a claim for the reasons stated in that Order. [Doc. 5]. The Court, however, allowed Plaintiff 30 days to file an amended complaint to attempt to state a claim. [Id. at 4]. Plaintiff timely filed an Amended Complaint, which is now before the Court on initial review.

In his Amended Complaint, Plaintiff names only his former employer, Niagara Bottling, as a Defendant in this matter. [Doc. 8 at 1-2]. Plaintiff asserts employment discrimination claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, based on alleged wrongful termination, unequal terms and conditions of his employment, and retaliation. [Id. at 3; Doc. 8-1 at 1-6]. Plaintiff also purports to state a claim under the Equal Pay Act of 1963. Plaintiff also references the North Carolina Whistleblower Act, N.C.G.S. § 126-84, *et seq.*, and the North Carolina Equal Employment Practices Act, N.C.G.S. § 143-422.2. [See Doc. 8-1 at 5-6; Doc. 8 at 3-4].

Plaintiff alleges, in part, as follows. Plaintiff is an African American male who wears his hair in dreadlocks. [Doc. 8-1 at 3]. He began working for Defendant in or around September 2018. [Doc. 8-1 at 4]. In or around the end of November 2019, Plaintiff got moved from third shift to first shift, where he was supervised by Terry Stevenson. Stevenson harassed Plaintiff as soon as Plaintiff joined first shift, micromanaging him and following him to and from the production floor during Plaintiff's allowed break times. Stevenson's behavior caused Plaintiff to fear losing his job if Plaintiff did not return from his breaks early. Stevenson asked Plaintiff, "why don't you cut your hair? Maybe then you would look like somebody." [Doc. 8-1 at 3]. Stevenson made other racist comments to Plaintiff. [Id.].

After a couple of days of this treatment, Plaintiff complained to human resources manager, "Melanie." Melanie advised Plaintiff that she would speak to Stevenson about his behavior, but she never did. After a verbal altercation between Stevenson and Plaintiff, Stevenson sent Plaintiff home without pay. Plaintiff began asking other employees about the Equal Employment Opportunity Commission (EEOC) and potential claims Plaintiff might have, which was communicated to management. [Doc. 8-1 at 3-4]. After management learned of Plaintiff's

investigating possible claims, Plaintiff was targeted for having his phone on the production floor, while all other employees also had their phones on the floor. [Id.]. Namely, on or around December 9, 2020, Plaintiff was written up for having his phone on the floor, although every other employee also had his/her phone on the floor. [Doc. 8-1 at 4]. Thereafter, Plaintiff asked to bring his phone to his car, which he did. While near or in his car, Plaintiff spoke to his mother. Defendant's warehouse manager, Greg Banks, claimed to be in his car parked directly in front of Plaintiff's car and to have overheard Plaintiff's statements to his mother that he, Plaintiff, could not believe "that cracker wrote him up" and that "he was going to get them, that they did not know it yet, but he was going to get them." [Doc. 8-2 at 5]. Plaintiff was terminated for allegedly communicating a threat of physical harm while on company premises. [Id. at 5]. In appeal proceedings at the N.C. Department of Commerce Division of Employment Security related to the denial of Plaintiff's unemployment benefits, Plaintiff denied using the word "cracker" and denied saying that he was "going to get them." [Id.]. The decision to deny Plaintiff's unemployment benefits was reversed on appeal. The Appeals Referee found that Plaintiff "was not discharged for misconduct connected with the work," as defined by N.C.G.S. § 96-14.6(a).

Plaintiff also claims that since the beginning of his employment, Defendant fired and demoted African American employees. [Doc. 8-1 at 3]. When Plaintiff was moved to first shift, he lost a dollar an hour in pay, as did another black employee, while a white employee in the same position retained his full pay. [Doc. 8-1 at 5]. Defendant also generally paid its black employees less than its white employees. [Id. at 5-6]. Plaintiff identifies two white employees that were making more money that two other identified black employees. [Id. at 6].

For relief, Plaintiff seeks monetary damages resulting from loss of medical insurance, lost wages, lost opportunity to win an employer-sponsored car giveaway, and lost future 401k

3

investments. Plaintiff also seeks punitive damages. [Doc. 8 at 5; Doc. 8-1 at 6-7].

### III. STANDARD OF REVIEW

Because Plaintiff is proceeding in forma pauperis, the Court must review the Amended Complaint to determine whether it is subject to dismissal on the grounds that it is "frivolous or malicious [or] fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2). In its frivolity review, this Court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). Furthermore, a pro se complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in her complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

### IV. DISCUSSION

#### A. Title VII

Title VII provides that an employer shall not "discriminate against any individual … because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Here, Plaintiff alleges discriminatory termination, retaliation, and unequal terms and conditions of employment. [Doc. 8 at 3-4; Doc. 8-1 at 1-7]. Taking Plaintiff's allegations as true and giving him the benefit of every reasonable inference, the Court finds that these claims are not clearly frivolous and survive initial review.

#### B. Equal Pay Act of 1963

Plaintiff purports to state a claim under The Equal Pay Act of 1963, 29 U.S.C. § 206(d)(1). This claim is misplaced. The Equal Pay Act prohibits discrimination in pay on the basis of gender.

4

29 U.S.C. § 206(d)(1).  It does not prohibit discrimination on the basis of race.  See id.; Spencer v. Virginia State University, 919 F.3d 199, 203 (4th Cir. 2019).  As such, Plaintiff's claim on this ground does not survive initial review and it will be dismissed.

### C. North Carolina Whistleblower Act

To the extent Plaintiff intends to assert a claim under the North Carolina Whistleblower Act, N.C.G.S. § 126-84, *et seq.*, the Court addresses it here.  [See Doc. 8 at 4].  The N.C. Whistleblower Act protects state employees from intimidation, harassment, and adverse action when such employee is engaging in a protected activity.  N.C.G.S. § 126-84(a).  This Act does not relate to or protect employees of private businesses.  As such, to the extent Plaintiff sought to assert a claim thereunder, it fails initial review and will be dismissed.

### D. North Carolina Equal Employment Practices Act

The North Carolina Equal Employment Practices Act, N.C.G.S. § 143-422.1, *et seq.*, is essentially North Carolina's equivalent to Title VII.  Courts are to "look to federal decisions for guidance in establishing evidentiary standards and principles of law to be applied in discrimination cases."  Youse v. Duke Energy Corp., 171 N.C. App. 187, 193, 614 S.E.2d 396, 401 (2005) (citation and quotations omitted).  Further, "the North Carolina Supreme Court has explicitly adopted the Title VII evidentiary standards in evaluating a state claim under § 143-422.2 insofar as they do not conflict with North Carolina statutes and case law."  Hughes v. Bedsole, 48 F.3d 1376, 1383 (4th Cir. 1995).  As such, because Plaintiff's claims under Title VII survive initial review, the Court will allow Plaintiff's claims under the N.C. Employment Practices Act to proceed as well.

## V. CONCLUSION

For the reasons stated herein, Plaintiff's claims under Title VII and the N.C. Equal Employment Practices Act survive initial review, including Plaintiff's claim for punitive damages. Plaintiff has failed to state a claim under the N.C. Whistleblower Act or the Equal Pay Act of 1963; these claims will be dismissed.

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiff's Amended Complaint [Doc. 8] survives initial review under Section 1915(e)(2) as to Plaintiff's claims under Title VII and the N.C. Equal Employment Practices Act, including his claim for punitive damages. All other claims in Plaintiff's Complaint fail initial review and are **DISMISSED**.

2. The Clerk of Court is instructed to mail a blank summons to Plaintiff to fill out for service of process on Defendant Niagara Bottling, LLC, and then return the summons to the Court. Plaintiff is required to provide the necessary information for the U.S. Marshal to effectuate service on Defendant. When the Court receives the summons from Plaintiff, the Clerk shall direct the U.S. Marshal to effectuate service upon Defendant.

Signed: November 16, 2020

Kenneth D. Bell
United States District Judge