IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CRIMINAL ACTION NO. 5:20-CV-00131-KDB-DCK

| | | |
|---|---|---|
| **JUDAMEYRE MCRAE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| **NIAGARA BOTTLING, LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**THIS MATTER** is before the Court on Defendant Niagara Bottling, LLC's ("Niagara") Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. No. 29) and *pro se* Plaintiff Judameyre McRae's ("McRae") Motion to Amend the Second Amended Complaint (Doc. No. 32). The Court has carefully considered these motions and the parties' related briefs and exhibits. For the reasons discussed below, the Court will **GRANT** Defendant's Motion to Dismiss and **DENY** Plaintiff's Motion to Amend.

I. BACKGROUND

Plaintiff, who is African-American, began working for Niagara as a Production Operator in or around September 2018.[1] (Doc. No. 23-1, at 4, 11). At some point, Plaintiff was moved from third shift to first shift and worked under the supervision of Terry Stevenson ("Stevenson"). Plaintiff alleges Stevenson treated him differently from other employees and discriminated against him "[a]lmost from day one." (Doc. No. 23-1, at 2). For instance, Plaintiff claims that Stevenson

---

[1] At the motion to dismiss stage, the Court accepts as true the facts alleged in Plaintiff's *pro se* Second Amended Complaint and construes the facts in the light most favorable to Plaintiff. *See, e.g.*, *Regents of the Univ. of Cal. V. Willis Towers Watson PLC (In re Willis Towers Watson PLC Proxy Litig.)*, 937 F.3d 297, 302 (4th Cir. 2019).

1

would often single him out by following him to and from the production floor during Plaintiff's allowed break time (causing Plaintiff to take shorter breaks than his coworkers) and yelling at him in front of his coworkers. (Doc. No. 23-1, at 2).

Plaintiff further alleges that Stevenson's treatment of him was racially motivated. *Id.* at 3. Stevenson apparently once asked Plaintiff, in reference to Plaintiff's dreadlocks, "why don't [you] cut [your] hair off? . . . maybe then you would look like somebody." *Id.* Plaintiff also contends that Stevenson made a number of other racist comments, but does not provide any specifics, even admitting that for one instance even he "h[as] no proof of" the comment "so [he] won't elaborate on it." *Id.* On November 30, 2019, Stevenson sent Plaintiff home without pay following a confrontation between them where Stevenson was "yelling at" Plaintiff. (Doc. No. 23-1 at 3). After this interaction with Stevenson, Plaintiff contacted HR manager Melanie Calkins and told her about Stevenson yelling at him and sending him home. However, Plaintiff felt that Calkins took Stevenson's side. *Id.* Subsequently, Plaintiff began "to ask about the EEOC to other employees," which he alleges "got back to management" and was a reason he was eventually fired. *Id.*

On December 9, 2019, Plaintiff was written up for having his phone on the production floor. (Doc. No. 23-1 at 4). While admitting that it is "not safe" to have cell phones on the production floor and that "a lot of the accidents that occurred at Niagara bottling" were caused by "cell phones being used on the production floor," Plaintiff still alleges that he was written up for cell phone use as retaliation for his inquiries about the EEOC. *Id.* Plaintiff also contends that all the other Niagara employees had their phones on the production floor but were not written up. *Id.* After being written up, Plaintiff requested permission to take his phone to his car. As Plaintiff was walking to his car, he had a phone conversation in the parking lot that was overheard by Greg Banks ("Banks"), Niagara's Warehouse Supervisor. *Id.* at 5. Banks apparently heard Plaintiff say,

2

"that cracker wrote him up" and that "he was going to get them, they did not know it yet, but he was going to get them." (Doc. No. 23-1 at 5). Banks reported the incident to Niagara and Plaintiff was discharged for communicating a threat of physical harm while on company premises. *See id.* at 12. Plaintiff concedes that he was "upset" after he had been written up for having his phone, but denies making any threatening statements.[2] (Doc. No. 23-1 at 5, 11). Plaintiff believes that Niagara "made [Banks] participate so it wouldn't look like retaliation." (Doc. No. 23-1 at 5).[3]

On August 5, 2020, Plaintiff received a "Dismissal and Notice of Rights" letter from the Equal Employment Opportunity Commission ("EEOC"). The EEOC issued the following determination:

> Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

(Doc. No. 1, at 9). On August 26, 2020, Plaintiff filed his initial complaint in this action naming as Defendants Melanie Calkins; Terry LNU, identified as a first shift supervisor at Niagara Bottling; and FNU LNU, identified as a first shift forklift supervisor at Niagara Bottling. (Doc. No. 1). Plaintiff claimed that Defendants discriminated against him under Title VII based on race through his termination from employment, unequal terms and conditions of his employment, and retaliation. Plaintiff also purported to assert a claim for defamation. *Id.* at 4. The Court conducted an initial review of that Complaint and found that Plaintiff failed to state a claim for relief because

---

[2] *See* Doc. No. 23-1 at 5 (stating that Banks "falsely accused" Plaintiff of making the statements that cost him his job).
[3] Plaintiff attaches a copy of an Appeals Decision from the North Carolina Department of Commerce, Division of Employment Security. (Doc. No. 23-1, at 6-17). As discussed below, this decision does not determine what Plaintiff believes it does (that he was falsely accused of communicating threats), nor does it weigh heavily in this Court's analysis.

3

he only named individuals as Defendants and individuals may not be held liable for unlawful discrimination under Title VII. (Doc. No. 5). As for Plaintiff's defamation claim, the Court dismissed it because Plaintiff failed to allege who made the defamatory statements about him or that the statements were published to a third party. *Id.* at 4. Additionally, with the dismissal of the federal Title VII claims, the Court did not have jurisdiction over his pendant state law claim. *Id.* The Court, however, allowed Plaintiff 30 days to file an amended complaint to attempt to state a claim. *Id.* at 4.

In his Amended Complaint, Plaintiff named only his former employer, Niagara Bottling, as a Defendant in this matter. (Doc. No. 8, at 1-2). Plaintiff's Amended Complaint survived initial review under Section 1915(e)(2) as to his claims under Title VII and the N.C. Equal Employment Practices Act, including his claim for punitive damages. (Doc. No. 11, at 6).[4] All other claims were dismissed. *Id.* Additionally, Plaintiff filed a "Motion to Increase Financial Damage Amount" requesting he be allowed to amend his complaint to ask for 14 million "to settle" or 50 million if the "case proceeds to trial." (Doc No. 20). The Court allowed Plaintiff's request to amend, but noted that "further amendments, or extensions of time to amend, are unlikely to be allowed." (Doc. No. 21). Following the Court's Order, Plaintiff filed a Second Amended Complaint. (Doc. No. 23). Now before the Court is Niagara's motion to dismiss Plaintiff's Second Amended Complaint, as well as Plaintiff's motion to amend his complaint for a third time to include a defamation of character claim. (Doc. No. 32).

---

[4] At this stage, the Court was conducting only a "frivolity" review, which requires the Court to determine whether the complaint raised an indisputably meritless legal theory or is founded upon clearly baseless factual contentions such as fantastic or delusional scenarios. *Neitzke v. Williams*, 490 U.S. 319, 327-28 (1989). This is a less stringent standard than the standard that applies on review of a motion to dismiss.

## II.     LEGAL STANDARD

Plaintiff is proceeding *pro se*. As such, this Court will liberally construe the procedural requirements of the Federal Rules of Civil Procedure to permit Plaintiff to pursue the merits of his claims. *See, e.g., Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed[.]"). "In interpreting a pro se complaint, however, our task is not to discern the unexpressed intent of the plaintiff, but what the words in the complaint mean." *Laber v. Harvey¸* 438 F.3d 404, 413 n.3 (4th Cir. 2006). "While pro se complaints may "represent the work of an untutored hand requiring special judicial solicitude," a district court is not required to recognize "obscure or extravagant claims defying the most concerted efforts to unravel them."' *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990) (citing *Beaudett v. City of Hampton,* 775 F.2d 1274, 1277 (4th Cir.1985)). Further, viewing *pro se* complaints in this manner "does not transform the court into an advocate" and "[o]nly those questions which are squarely presented to a court may properly be addressed." *Id.*

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted" tests whether the complaint is legally and factually sufficient. *See* Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp.*, 550 U.S. at 570; *Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd sub nom. Coleman v. Court of Appeals of Maryland,* 566 U.S. 30 (2012). In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts

5

in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). Construing the facts in this manner, a complaint must only contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (internal quotations omitted). Thus, a motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of North Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

Rule 15(a) of the Federal Rules of Civil Procedure requires that leave to file an amended complaint be "freely given when justice so requires." Fed. R. Civ. Proc. 15. Consistent with that lenient standard, the Supreme Court has held that "[i]f the circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded the opportunity to test his claim on the merits." *See Foman v. Davis,* 371 U.S. 178, 182 (1962). However, the opportunity to amend a complaint is not unbounded. Leave to amend a pleading should be denied "when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would [be] futile." *Laber v. Harvey,* 438 F.3d 404, 426 (4th Cir. 2006) (*quoting Johnson v. Oroweat Foods Co.,* 785 F.2d 503, 509 (4th Cir. 1986), *Foman v. Davis,* 371 U.S. 178, 182 (1962)).

The All Writs Act, 28 U.S.C. § 1651(a) (2000), grants federal courts "the authority to issue prefiling injunctions against vexatious litigants." *Thomas v. Fulton¸* 260 F. App'x 594, 596 (4th Cir. 2008) (citing *Cromer v. Kraft Foods N. Am., Inc.,* 390 F.3d 812, 817 (4th Cir. 2004)). Although the implementation of such measures against *pro se* plaintiffs should be approached with caution, an injunction is appropriate if a litigant continuously abuses the judicial process "by filing

6

meritless and repetitive actions." *Cromer,* 390 F.3d at 818 (quoting *Brow v. Farrelly,* 994 F.2d 1027, 1038 (3d Cir.1993)). This includes "successive law suits involving the same issues against the same parties that are vexatious in nature." 43A C.J.S. *Injunctions* § 109 (2021).

### III. DISCUSSSION

#### A. Motion to Dismiss

Niagara moves to dismiss all of the claims in Plaintiff's Second Amended Complaint: "(1) Plaintiff's claim under Title VII for wrongful termination and unequal terms and conditions of his employment; (2) Plaintiff's Title VII claim of retaliation; and (3) Plaintiff's claim under the North Carolina Equal Employment Practices Act, N.C. Gen. Stat. § 143-422.1" ("NCEEPA"). (Doc. No. 29 at 1).

##### i. Title VII: Race Discrimination

A plaintiff may establish "liability under Title VII by employing two methods of proof (1) 'demonstrating through direct or circumstantial evidence that [their race] was a motivating factor in the employer's adverse employment action' or (2) relying on the burden shifting scheme set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Swaso v. Onslow Cnty Bd. of Educ.*, 698 F. App'x 745, 747 (4th Cir. 2017) (quoting *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 213-14 (4th Cir. 2007)). Direct evidence is evidence from which no inference is required. To show race discrimination by direct evidence, a plaintiff typically must show discriminatory motivation on the part of the decisionmaker involved in the adverse employment action. *See Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 286-91 (4th Cir. 2004). Such direct evidence would include a decisionmaker's statement that he fired a plaintiff due to his race. *See id.* at 303. The decisionmaker must be either the employer's formal decisionmaker or a subordinate who was "principally responsible for," or "the actual decisionmaker behind," the allegedly discriminatory action. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133,

7

151-52 (2000). To state a claim for race discrimination under *McDonnell Douglas*, a plaintiff must allege "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010).

At the motion to dismiss stage, "an employment discrimination plaintiff need not plead a prima facie case of discrimination" to survive a motion to dismiss. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002). Instead, a Title VII plaintiff is "required to allege facts to satisfy the elements of a cause of action created by that statute." *McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015). For the pertinent statute, Title VII, a plaintiff must allege facts sufficient to show that the defendant "discharge[d] [him] because of [his] race [or] color." 42 U.S.C.A. § 2000e-2(a)(1).[5] Accordingly, the inquiry here is whether Plaintiff alleges facts that plausibly state a violation of Title VII "above a speculative level." *Coleman,* 626 F.3d at 190 (4th Cir. 2010); *see also Bing v. Brivo Sys., LLC*, 959 F.3d 605, 617 (4th Cir. 2020). "[V]ague claims of differing treatment" will not suffice to support allegations that conduct was racially motivated. *Jackson v. Maryland*, 171 F. Supp. 2d 532, 541 (D. Md. 2001).

Turning to Plaintiff's Second Amended Complaint, he alleges the following:

- Stevenson would never speak to Plaintiff when Plaintiff would wish him "good morning or have a nice day." Rather, Plaintiff claims Stevenson would turn his head. (Doc. No. 23-1, at 2).

- Stevenson would follow Plaintiff around on Plaintiff's breaks, which is something Stevenson did not do to any other employee. *Id.* ("[H]e would follow me on break everyday on every break micromanaging only me but did not treat one other employee in that manner.").

---

[5] Put another way, to state a claim for race discrimination, a plaintiff must allege facts making it plausible "that, but for race, [they] would not have suffered the loss of a legally protected right." *Comcase Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020).

8

- Because Stevenson followed Plaintiff around, Plaintiff would take significantly shorter breaks. For instance, Plaintiff claims he would be gone for only 5-7 minutes of a 15-minute break or 15 minutes on a 30-minute break. However, his teammate, and other employees, would take an hour for all three breaks. *Id.*

- Stevenson would require Plaintiff to go to another department, "which no one wanted to work there because they were making more money and the work was more demanding and [Stevenson] would only send [Plaintiff]." *Id.*

- Stevenson yelled at Plaintiff in front of other employees.

- Stevenson asked Plaintiff: "Why don't you cut your hair? Maybe then you would look like somebody." *Id.* at 3. Plaintiff has dreadlocks.

- Stevenson made a "very racist comment" to Plaintiff one day, but Plaintiff says he has "no proof" of such comment so he "won't elaborate on it." *Id.* at 3. Plaintiff further alleges that Stevenson "was saying racist stuff to [him] a lot when he would say anything." *Id.*

- Stevenson sent Plaintiff home early on November 30, 2019 without pay. *Id.*

- A white employee was fired before for threatening a supervisor, but was later hired back only to be fired again for threatening a supervisor. Plaintiff never received "another chance." *Id.*

- He was written up for having his phone on the production floor when "every single [other] employee ha[d] their phones on the production floor[.]" *Id.* at 4.

- Stevenson was "known to do other black employees in this manner that he did to [Plaintiff]" and Plaintiff was told on his first day to "watch out for [Stevenson] because he does not like black people." *Id.*

- According to Plaintiff, the NC Department of Employment found that Plaintiff was "wrongly terminated" and "falsely accused of making a threat of physical violence." *Id.* at 4-5.

- When Plaintiff moved from third shift to first shift, he and another black employee lost $1 in pay but a white employee that also came from third shift said that "he still made the same thing." *Id.* at 5.

Accepting all of these factual allegations as true, Plaintiff fails to state a plausible claim that his termination, or any other adverse employment action, was the result of unlawful racial discrimination against him. First, Plaintiff's allegations do not constitute direct evidence of race

9

discrimination against him. Plaintiff's allegations that Stevenson made a "very racist comment" to him once and that Stevenson "was saying racist stuff to [him] a lot when he would say anything" are too conclusory and vague to plausibly state a claim upon which relief can be granted. *Giarratano v. Johnson*, 521 F.3d 298, 304 n. 5 (4th Cir. 2008) (stating that even a *pro se* litigant must still plead "more than labels and conclusions" to plausibly state a claim upon which relief can be granted).

Regarding Stevenson's alleged statement that Plaintiff should cut his dreadlocks,[6] Niagara cites to *EEOC v. Catastrophe Mgmt. Sols.*, in which the Eleventh Circuit stated, "As far as we can tell, every court to have considered the issue has rejected the argument that Title VII protects hairstyles culturally associated with race." 852 F.3d 1018, 1032 (11th Cir. 2016) (referencing ten different cases, including one from the Fourth Circuit, that support the holding that hairstyles are not protected under Title VII). The Court need not go so far here. Plaintiff fails to proffer any facts which would plausibly connect Stevenson's alleged statement to the decision to terminate Plaintiff's employment, nor does Plaintiff allege that Stevenson had any involvement in the circumstances leading up to his termination.[7] Nor does Plaintiff proffer any facts to show that Banks, who reported Plaintiff for communicating a threat, had any racial bias against him or that they even knew each other. Thus, when considering the "obvious alternative explanation," that Plaintiff was discharged as a result of his violation of company policy and/or

---

[6] Niagara argues that any of the comments Plaintiff alleges Stevenson made were "too remote in time to be plausibly connected to his termination." (Doc. No. 30, at 10). Niagara incorrectly cites that Plaintiff's termination occurred in December 2020. It actually occurred in December 2019, as evidenced by the North Carolina Department of Commerce documentation. (Doc. No. 23-1, at 8-17).

[7] "It is the decision maker's intent that remains crucial," *Merrit v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 300 (4th Cir. 2010), and "statements by non-decision makers or statements by decision makers unrelated to the decisional process itself" are not sufficient to satisfy Plaintiff's burden. *Price Waterhouse v. Hopkins,* 490 U.S. 228, 277 (1989) (O'Connor, J., concurring).

alleged subsequent threats, [8] "plaintiff[] here ha[s] not nudged [his] claims across the line from conceivable to plausible." *Twombly* 550 U.S. at 567, 570.

Plaintiff also fails to state a claim under an indirect evidence standard. As stated above, Plaintiff admits in his Second Amended Complaint that Defendant terminated him for "communicating threats," an offense for which non-minority employees had also been fired. While he contests that this was the real reason, Plaintiff admits that he was in violation of Defendant's cell phone policy and, though he disputes what was said in the parking lot, he concedes that he was "upset" about his "unfair treatment" when he was overheard by Banks. (Doc. No. 23-1, at 4, 11-12). Defendant argues that Plaintiff's admission that he was violating the cell phone policy means that it "would simply be unreasonable to conclude that Plaintiff was meeting the legitimate expectations of Niagara when [Plaintiff] admits he was in violation of policy and that he was communicating threats against other employees on company property." (Doc. No. 30, at 12).

The NC Department of Commerce's decision determining that Plaintiff qualifies for unemployment benefits, which is attached to Plaintiff's Second Amended Complaint, does not make Plaintiff's claims of discrimination plausible. (Doc. No. 23-1, at 13). In its decision, the Department of Commerce recognized that Niagara's "policies prohibit communicating a threat of physical harm while on company premises." *Id.* at 11. Banks told the Department that he heard Plaintiff "state that he could not believe that 'that cracker wrote him up' and that 'he was going to get them, that they did not know it yet, but he was going to get them.'" *Id.* at 12. Banks further acknowledged "that he did not know what [Plaintiff] might have meant by ["going to get

---

[8] Plaintiff also states that he was aware that a "white employee was fired before for threatening a supervisor," the conduct of which he is accused. (Doc. No. 23-1 at 3).

11

them"], whether to 'get them' physically, legally, or whatever." *Id.* Thus, the Department found that Plaintiff was not prohibited from obtaining unemployment benefits because Niagara "failed to present sufficient, competent, direct evidence that [plaintiff] communicated a threat of *physical harm* while on company premises." *Id.* at 13 (emphasis added). The Department of Commerce did not, however, determine that Plaintiff was wrongfully terminated or that the company did not have the right to interpret "going to get them" as an improper threat justifying termination.

Even if Plaintiff were meeting legitimate expectations, he has failed to plausibly plead different treatment from similarly situated employees outside the protected class. Plaintiff alleges that *none* of his other coworkers were subject to the same treatment by Stevenson, but Plaintiff does not allege that all of the other employees were white (rather, the clear inference from his other allegations is that Niagara had a mixed-race workplace). Nor does he detail what Stevenson would yell at him about or set forth any basis to suggest that race was the motivating factor in Stevenson's treatment of Plaintiff other than conclusory and vague allegations. In sum, Plaintiff does not plausibly allege that Niagara treated non-minority employees better, but rather that Niagara targeted him personally. However, being targeted personally does not equate to being targeted racially, which is the sole basis for recovery under Plaintiff's Title VII claim. Recently, the Fourth Circuit in *Bingo v. Brivo Systems, LLC*, held that "the mere fact that a certain action is potentially consistent with discrimination does not alone support a reasonable inference that the action was motivated by bias." 959 F.3d at 618. The same can be said for Plaintiff's allegations here.

While Plaintiff makes other allegations, he does so without sufficient detail from which the Court can evaluate the plausibility of such a claim. Absent from these allegations are the

12

relevant specific circumstances that would possibly allow the case to move forward on Plaintiff's race discrimination claim. Therefore, Plaintiff's claims do not support reasonable inferences of race-based discrimination, but rather require "speculation" to "fill in the gaps" as to whether Defendant's actions were racially motivated. *McCleary-Evans*, 780 F.3d at 586. Accordingly, the Court will dismiss Plaintiff's Title VII race discrimination claim.

      *ii.*    *Title VII: Retaliation*

Under Title VII, an employer shall not "discriminate against any of his employees because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing." 42 U.S.C. § 2000e–3(a). "The elements of a prima facie retaliation claim under Title VII are: (1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the employment action." *Coleman*, 626 F.3d at 190. "[P]rotected activity involves opposing, or participating in a grievance proceeding concerning, employment practices made unlawful by Title VII[.]" *Ray v. Amelia Cty. Sheriff's Office,* 302 F. App'x 209, 213 (4th Cir. 2008) (citing *Kubicko v. Ogden Logistics Services,* 181 F.3d 544, 551 (4th Cir. 1999)).

Defendant argues that Plaintiff's only allegations with regard to purported protected activity—(1) that he complained about Stevenson's treatment of him, and (2) made general inquiries about the EEOC to other employees—are insufficient to constitute protected activity. However, even if Plaintiff had alleged facts that showed he engaged in protected activity, he fails to demonstrate that there was any causal connection between that activity and his termination. **"**[S]ince the statute only prohibits an employer from discriminating 'because' the employee has engaged in a certain type of conduct, 'Title VII retaliation claims require proof that *the desire to retaliate* was the but-for cause of the challenged employment action.'" *Villa v.*

13

*CavaMezze Grill, LLC*, 858 F.3d 896, 900 (4th Cir. 2017) (quoting *University of Tx Sw Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2528 (2013)).

While Plaintiff alleges that Banks "falsely accused [him] of making a statement that would ultimately cost [Plaintiff his] job," Plaintiff does not dispute that he was in the parking lot or that Banks could have overheard him; he only disputes the severity of what he said on the phone. (Doc. No. 23-1, at 5, 11-12). Plaintiff offers only speculation that Banks, a person Plaintiff knew "by face but not by name," or Niagara had a desire to retaliate against him or knew of any alleged protected activity that Plaintiff engaged in. (Doc. No. 23-1 at 3). Therefore, Plaintiff's retaliation claim must be dismissed as well.

### iii. NCEEPA

The North Carolina Equal Employment Practices Act, N.C.G.S.A. § 143-422.2, states: "It is the public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of race." The North Carolina Supreme Court has adopted the Title VII evidentiary standards in evaluating claims under the NCEEPA. *Hughes v. Bedsole,* 48 F.3d 1376, 1383 (4th Cir. 1995). Thus, because Plaintiff's claims have failed under Title VII, Plaintiff's NCEEPA claim also fails.[9]

### B.     Motion to Amend

Plaintiff's Motion to Amend relates to a photograph of him that Niagara posted "all over [its] plant." (Doc. No. 32 at 2). Plaintiff alleges that the photograph and accompanying text,

---

[9] Defendant also includes "Plaintiff's Apparent Claim for Perjury" in its Motion to Dismiss. To the extent that Plaintiff was attempting to state a claim for perjury, the Court agrees with Defendant that "Plaintiff's attempt to add a claim for perjury in his Second Amended Complaint is beyond the scope [of] the Court's Order granting his Motion To Increase Financial Damage to "revise his claim for damages.'" [Doc. No. 30 at 18]. Nor are there sufficient facts alleged to state a claim for perjury.

14

labeling him as a potential threat, constitutes defamation of character. *Id.* The text accompanying the prior employee photograph of Plaintiff reads: "If the individual pictured below (Juda McRae) is seen on company property there is a potential threat and call 911 immediately. You should also notify your supervisor ASAP. This is a good reminder that we should never let anyone who is not a current employee into the building." (Doc. No. 32 at 4). Plaintiff claims that posting the photo of him "is the most blanton [sic] and malicious act that has ever happened to [him]," "unthinkable," and "wrong and unlawful." *Id.*

Niagara was prompted to post Plaintiff's photo after an aggressive exchange between Plaintiff and Niagara's counsel. In this email exchange in January 2021, Plaintiff tells Niagara's counsel he "would rather go to prison then let ya'll get away." (Doc. No. 38-1 at 2). After receiving the e-mail, and "in light of Plaintiff's prior termination for communicating threats against coworkers," counsel informed Niagara of Plaintiff's communications. (Doc. No. 38 at 3). After consulting with plant security and the Mecklenburg County Police Department, Niagara decided to post the photo on which Plaintiff is now basing his defamation claim on. *Id.* at 3-4.

As stated earlier in the Order, Plaintiff filed his initial Complaint in August 2020. The Court found his Complaint deficient and provided him with 30 days in which to amend the Complaint. (Doc. No. 5). Plaintiff filed an Amended Complaint within the 30 days. (Doc. No. 8). Then Plaintiff filed a motion to increase the financial damage amount he was requesting in his Amended Complaint. (Doc. No. 20). His motion was granted, and Plaintiff was permitted to file a Second Amended Complaint. (Doc. No. 21). In the order granting Plaintiff's request to file a Second Amended Complaint, the Court warned Plaintiff that "further amendments or extensions of time to amend, are unlikely to be allowed." (Doc. No. 21).

Rule 15(d) of the Federal Rules of Civil Procedure provides that "[o]n reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any

15

transaction, occurrence, or event that happened after the date of the pleading to be supplemented." "Rule 15(d) motions are to be evaluated under the same standards used to evaluate motions to amend the pleadings under Rule 15(a), which generally states that leave to amend should be freely granted when justice requires unless there are valid reasons for denying leave, such as undue delay, bad faith or futility." *Estate of Williams-Moore v. Alliance One Receivables Mgmt., Inc.*, 335 F. Supp. 2d 636, 644 (M.D.N.C. 2004).

Because Plaintiff's Motion to Amend seeks to add futile claims, it will be denied.[10] Generally, "[a] communication is defamatory only if it is false and tends to impeach the plaintiff's reputation;" accordingly, "[t]ruth of the matter or substantial truth is a complete defense to a claim for defamation." *A Fisherman's Best Inc., v. Recreational Fishing Alliance*, 310 F.3d 183, 196 (4th Cir. 2002). Here, Niagara's reference to Plaintiff as a "*potential threat*" is not false in light of the email communications Niagara attached to its motion.

Additionally, if Plaintiff's claim had not already failed under a general defamation analysis, it would fail under a libel analysis as well. "[D]efamation includes two distinct torts, libel and slander," and "[i]n general, libel is written while slander is oral." *Tallent v. Blake*, 291 S.E.2d 336, 338 (1982). Here, as Plaintiff's claim of defamation is rooted in the photograph and accompanying text posted by Niagara, a libel *per se* analysis is also appropriate. (Doc. No. 32, at 2); *see Renwick v. News and Observer Pub. Co.*, 312 S.E.2d 405, 408 (1984). North Carolina has defined libel *per se* as "a publication by writing, printing, signs or pictures which, when considered alone without innuendo, colloquium or explanatory circumstances: (1) charges that

---

[10] Since the Court is denying Plaintiff's Motion to Amend on these grounds, it need not reach the question of whether the motion is brought in bad faith. As Niagara states in its response in opposition to Plaintiff's Motion to Amend, Plaintiff moves to amend his complaint for a third time for Niagara's reasonable response to written communications, which could reasonably be construed as threats of violence by Plaintiff. Granting Plaintiff's motion to amend would merely reward Plaintiff's inappropriate behavior.

16

a person has committed an infamous crime; (2) charges a person with having an infectious disease; (3) tends to impeach a person in that person's trade or profession; or (4) otherwise tends to subject one to ridicule, contempt or disgrace." *Id.* at 409 (citing *Flake v. Greensboro News Co.*, 195 S.E. 55, 60 (1983)).

Plaintiff states that "[t]hey have me looking like a killer, or someone who committed a crime." (Doc. No. 32 at 2). However, the photograph simply states that Plaintiff is a "potential threat" and does not state that he is a criminal or has committed any infamous crimes. (Doc. No. 32 at 4). Further, the photograph is from his prior employment with Niagara, not one that taken alone would indicate that Plaintiff is a criminal, like a mugshot. (Doc. No. 38 at 7). Thus, the posting is not charging Plaintiff with an "infamous crime." Furthermore, the posting does not subject Plaintiff to "ridicule, contempt or disgrace." As the North Carolina Court of Appeals has explained, "The question always is how would ordinary men naturally understand the publication . . . . The fact that supersensitive persons with morbid imaginations may be able, by reading between the lines of [a publication], to discover some defamatory meaning therein is not sufficient to make them libelous. In determining whether [a publication] is libelous *per se* the [publication] alone must be construed, stripped of all insinuations, innuendo, colloquium and explanatory circumstances. The [publication] must be defamatory on its face 'within the four corners thereof,'" *Broughton v. McClatchy Newspapers, Inc.*, 161 N.C. App. 20, 28 (N.C. Ct. App. 2003). Here, Plaintiff complains only of what the posting by Niagara insinuates, taking it beyond the "four corners" of the posting. The posting, noting simply that Plaintiff is a "potential threat" and using only Plaintiff's official photograph from his prior employment with Niagara, does not constitute a defamation claim and any amendment to his complaint to include such a claim would be futile.

17

To the extent Plaintiff moves to amend his complaint to include a "copyright infringement" claim, his motion is also denied. (Doc. No. 32 at 1). Plaintiff cites to 47 U.S.C. § 230 in support of this claim, however, 47 U.S.C. § 230 concerns internet service providers and is completely unrelated to the facts of this case. Plaintiff also fails to allege any facts regarding any internet posting by Niagara or anything else related to "copyright infringement." Thus, like the defamation claims, this copyright infringement claim is futile.

### C. Frivolous Filings

Within the span of 11 months Plaintiff has filed, including this action, four separate claims regarding this matter and numerous other frivolous filings.[11] In light of this excessive volume, the Court finds it prudent to warn Plaintiff about the potential consequences of continuing to file vexatious or frivolous claims and/or filings. If Plaintiff continues to file frivolous claims and/or filings, Plaintiff may be subject to sanctions, monetary or otherwise, and/or a pre-filing injunction that could limit his ability to submit filings in this Court without advance approval. *Cromer v. Kraft Foods N. Am., Inc.*, 390 F.3d 812, 818 (4th Cir. 2004) (noting the Court must consider: (1) the party's history of litigation, in particular whether he has filed vexatious, harassing, or duplicative lawsuits; (2) whether the party had a good faith basis for pursuing the litigation, or simply intended to harass; (3) the extent of the burden on the courts and other parties resulting from the party's filings; and (4) the adequacy of alternative sanctions). Accordingly, Plaintiff is cautioned to avoid submitting vexatious, repetitive, and/or frivolous filings in the instant matter or other matters before this Court.

---

[11] *See* Civil Case No. 5:20-cv-149; Civil Case No. 5:20-cv-91; Civil Case No. 5:20-cv-92.

## IV. ORDER

**IT IS, THEREFORE, ORDERED** that:

1. Defendant's Motion to Dismiss, (Doc. No. 29), is **GRANTED** and Plaintiff's Second Amended Complaint is **DISMISSED**;

2. Plaintiff's Motion to Amend, (Doc. No. 32), is **DENIED**; and

3. Plaintiff is hereby warned that federal courts, including this Court, are authorized to impose sanctions upon vexatious and repetitive litigants for frivolous filings. Further frivolous filings by Plaintiff may result in this Court sanctioning him, including by ordering a pre-filing injunction that limits his access to the court.

**SO ORDERED**.

Signed: August 10, 2021

Kenneth D. Bell
United States District Judge